Gesund Law Offices, LLC
Keren E. Gesund, Esq.
Nevada Bar No. 10881
1533 Sun Copper Dr.
Las Vegas, NV, 89117
Tel: (702) 300-1180
gesundk@gesundlawoffices.com
Attorney for Plaintiff

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| KAREN GRUBER, an individual,<br><br>    Plaintiff,<br><br>vs.<br><br>CRIME BUSTERS OF NEVADA, INC. DBA ASAP SECURITY a Nevada corporation, and ADT, LLC DBA ADT SECURITY SERVICES, a foreign limited liability company.<br><br>    Defendant | Case No.: [Number]<br><br>**COMPLAINT**<br><br>**Demand for Jury Trial** |

KAREN GRUBER ("Plaintiff"), by and through counsel, GESUND LAW OFFICES, LLC, alleges the following against CRIME BUSTERS OF NEVADA, INC., DBA ASAP SECURITY ("CBN") and ADT, LLC, DBA ADT SECURITY SERVICES. ("ADT"):

1

PLAINTIFF'S COMPLAINT

## INTRODUCTION

1. Plaintiff's Complaint is based on Regulation Z of the Truth in Lending Act, 15 USC § 1601, *et seq*. ("TILA") and Nevada Revised Statutes 598, *et seq*. Plaintiff also seeks declaratory relief as to the liquidated damages clause.

## JURISDICTION AND VENUE

2. The Court has jurisdiction over this action pursuant to Regulation Z of the Truth in Lending Act, 15 U.S.C. § 1601, *et seq*. ("TILA") and 28 U.S.C. § 1331.

3. The Court has supplemental jurisdiction for the state law claims pursuant to 28 USC § 1367.

4. Venue is appropriate pursuant to 28 U.S.C. §1391(a) because a substantial part of the event giving rise to the claims asserted arose in this District. Venue is also appropriate pursuant to 28 U.S.C. § 1391(b) because Defendants conduct substantial business in this District, have sufficient minimum contacts with this District, and otherwise purposely avail themselves of the markets in this District, through the promotion, sale, and marketing of its products and services in this District.

## PARTIES

5.      Plaintiff is a natural person residing in Las Vegas, Nevada 89156.

6.      Plaintiff is a "consumer" as defined by 15 U.S.C. § 1602(i).

7.      Defendant CBN dba ASAP Security is a "creditor" as defined by 15 U.S.C. § 1602(g) located at 3170 Polaris Avenue, Suite 4, Las Vegas, NV 89102 and is a registered Nevada corporation.  At all times relevant herein, CBN was acting on behalf of ADT to sell ADT alarm and monitoring services to plaintiff.

8.      Defendant ADT is a "creditor" as defined by 15 U.S.C. § 1602 (g) with its corporate headquarters located at 1501 Yamato Road, Boca Raton, FL 33431.  ADT provides alarm and monitoring services in Nevada through authorized dealers.

9.      CBN and ADT were agents or joint venturers of each other at all times mentioned herein and, in entering into and enforcing ADT's contracts, CBN was acting within the course and scope of such agency and/or joint venture.  ADT had actual and/or constructive knowledge of the acts of CBN and ratified, approved, joined in and/or authorized the acts of any authorized dealer in connection with the facts giving rise to the present claims.

## FACTUAL ALLEGATIONS

10.     On or before December 18, 2012, Plaintiff contacted CBN to obtain alarm and monitoring services for her ailing father.

11. On or about December 18, 2012, CBN sent a sales representative named Manny to sell Plaintiff ADT alarm and monitoring services.

12. That same day, Plaintiff executed an ADT contract for alarm and monitoring services. A copy of the contract is attached hereto as Exhibit A.

13. In addition to executing the contract that day, Plaintiff paid a $99 installation fee.

14. According to the terms of the contract, Plaintiff could "CANCEL THIS TRANSACTION AT ANY TIME PRIOR TO MIDNIGHT OF THE THIRD BUSINESS DAY AFTER THE DATE OF THIS TRANSACTION." *See* Exhibit A, p. 1.

15. The contract also provides that if the customer "CANCEL[s] OR OTHERWISE TERMINATE[s] THIS CONTRACT DURING ITS INITIAL THREE (3) – YEAR TERM, [CUSTOMER] WILL PAY 75% OF THE REMAINING TOTAL MONTHLY SERVICES CHARGES." *Id*. at p. 5, ¶ 2.

16. Further, the "Dealer has the right to increase the annual service charge for any Service at any time after the first year." *Id*. at p. 5, ¶ 3.

17. The contract does not identify the creditor ASAP Security, CBN, or the dealer's licensing number. *Id*. at p. 1.

18. The contract does not recite the total purchase price for the alarm services or the amount which remained unpaid after the initial $99 remittance. *Id*.

19. The next day, on or about December 19, 2012, Plaintiff realized she could not commit to a 3 year contract. Plaintiff called Manny and told him (1) her father was having difficulty using the system, (2) she was not certain he would live another 3 years, and (3) that she wished to cancel the agreement.

20. Manny misrepresented to Plaintiff that she could actually cancel the contract within 6 months "for any reason".

21. Based on this misrepresentation, Plaintiff agreed to a 6 month trial period, but warned Manny that she would probably be cancelling the contract.

22. On or about January 11, 2013, Plaintiff's father suffered a stroke and on or about January 15, 2013, he passed away.

23. On or about January 29, 2013, less than two months later, Plaintiff notified CBN her father had died and she wished to cancel the ADT service.

24. CBN refused to cancel service, informing Plaintiff that it could not release her from the contract because CBN needed to make back the money it spent on the security installation.

25. CBN alleges it incurred $960 to install the security system.


**FIRST CAUSE OF ACTION
CBN AND ADT VIOLATED REGULATION Z OF
THE TRUTH IN LENDING ACT**

26. Defendants CBN violated the TILA as follows:

   a. Defendants violated § 1638 of the TILA by failing to disclose the creditor CBN in the contract.

   b. Defendants violated § 1638 of the TILA by failing to disclose the total purchase price of the alarm services for 3 years (i.e. the contract term). *See also Mourning v. Family Publications Services, Inc.*, 411 U.S. 356, 358, 93 S. Ct. 1652, 1655 (1973). Defendants could not provide the total purchase price for the alarm services because the contract allows for an arbitrary price increase after the first year. "Dealer has the right to increase the annual service charge for any Service at any time after the first year." *Id.* at p. 5, ¶ 3.

   c. Defendants violated § 1638 of the TILA by failing to disclose the amount which remained unpaid after the initial $99 remittance. *See also Mourning v. Family Publications Services, Inc.*, 411 U.S. 356, 358, 93 S. Ct. 1652, 1655 (1973). The form ADT ALARM SERVICES CONTRACT does not contain a section for remaining unpaid balance.

d. ADT had actual and/or constructive knowledge of the acts of CBN and ratified, approved, joined in and/or authorized the acts of any authorized dealer in connection with the facts giving rise to the present claims.

**SECOND CAUSE OF ACTION**
**DEFENDANTS VIOLATED NRS 598**

27. Defendants CBN violated NRS 598 as follows:

   a. Defendants violated NRS 598.0915(15) by knowingly and intentionally misrepresenting that Plaintiff had 6 months to cancel her contract "for any reason" when she only had 3 days to do so.

   b. Plaintiff, who called on December 19, 2012, *one* day after executing the contract, to cancel the contract, reasonably relied on that misrepresentation and continued services.

   c. As a result of the misrepresentation Plaintiff has incurred actual damages.

   d. Defendants violated NRS 598.0923(2) by failing to disclose the following material facts: the total purchase price for the 3 year alarm service contract and the amount still owed after Plaintiff's initial $99 remittance.

   e. Defendants violated NRS 598.0923(3) by violating the TILA.

   f. Plaintiff seeks punitive damages for Defendants Deceptive Trade Practices pursuant to 42.005.

7

PLAINTIFF'S COMPLAINT

## THIRD CAUSE OF ACTION
## DECLARATORY RELIEF

28. Plaintiff seeks declaratory relief that the early termination fee in the contract is an unenforceable liquidated damages provision.

29. The liquidated damages provision for 75% of the 3 year service contract is disproportionate to any actual damages sustained by Defendants.

30. Defendants allege CBN incurred $960 to install/set up Plaintiff's alarm system (excluding the price of equipment previously installed). Plaintiff paid $99 for the initial install, and made a payment of $42.99 before her father passed away and her attempt to cancel service, leaving $818.01 unpaid. However, the liquidated damages provision would have plaintiff pay $1,130.74 to terminate the contract.

31. Defendants are able to calculate the total cost of installation and monthly service charges for their service contracts, rendering a flat 75% liquidated damages provision unnecessary and disproportionate to any actual damages Defendants may sustain.

WHEREFORE, Plaintiff, KAREN GRUBER, respectfully prays for judgment as follows:

    a. Statutory damages for $2,000 for violation of the TILA pursuant to 15 U.S.C. § 1640(a)(2)(A)(i), *See Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S.50 125 S.Ct. 460 (2004);

    b. Punitive damages pursuant to 42.005;

    c. All reasonable attorneys' fees, witness fees, court costs and other litigation costs incurred by plaintiff pursuant to 15 U.S.C. § 1640(a)(3); and

    d. Any other relief deemed appropriate by this Honorable Court.

## DEMAND FOR JURY TRIAL

PLEASE TAKE NOTICE that Plaintiff, KAREN GRUBER, hereby demands a jury trial for this case.

Dated this 13th day of June, 2013.

RESPECTFULLY SUBMITTED

/s/ Keren E. Gesund
KEREN E. GESUND
Nevada Bar No. 10881
Gesund Law Offices, LLC
1533 Sun Copper Dr.
Las Vegas, NV 89117
Tel: (702) 300-1180
gesundk@gesundlawoffices.com